24 C.C.P.A.(Patents)

## ANDERSON v. SHAW.

### Patent Appeal No. 3732.

Court of Customs and Patent Appeals.

Feb. 23, 1937.

Paul A. Blair, of Washington, D. C. (John B. Hayward, Clifton V. Edwards, and Robert S. Blair, all of New York City, and Harold K. Parsons, of Cincinnati, Ohio, of counsel), for appellant.

Elmer Stewart, of Washington, D. C. (Joseph K. Schofield, of Hartford, Conn., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention upon the counts here involved to appellee.

The counts in issue read as follows:

"Count 1. In a hydraulic machine of the character described, the combination of a tracer mechanism, a cutter, a support on which the tracer mechanism and cutter are mounted, a master, a second support on which the master and the workpiece are mounted, means for effecting relative movements of said supports towards and away from each other, hydraulic means for relatively moving said supports transversely of each other, and hydraulic means for controlling both said previously recited means operative by displacements of the tracer point through contact with the master.

"Count 2. In a hydraulically operated die-sinking machine, including means for supporting a work piece and a master as a first pair in predetermined relative position, and additional means for supporting a tool in opposition to the work piece and a tracer body in opposition to the master as a second pair, a hydraulic motor for effecting a movement of one of said pairs in a direction toward or away from the other pair, a second hydraulic motor for effecting movement of one of said pairs transversely with respect to the other pair, hydraulic valve means for controlling the operation of said hydraulic motors, a tracer point for engagement with the master, means mounting the tracer point in the tracer body for universal movement whereby on contact with the master it may be displaced in any direction from its normal position and operative connections between the tracer point and the hydraulic valve means whereby deflection of the tracer point relative to the tracer body energizes said hydraulic valve means to keep the tracer point and master in contact one with the other and thus cause the relative path of movement between cutter and work to conform with the shape of the master."

The interference arises between a patent to appellant and an application filed by appellee on May 22, 1930. Appellant's patent, No. 1,952,231, was issued on March 27, 1934, upon an application filed October 20, 1931. The claims here involved were copied by appellee from appellant's said patent on April 26, 1934. The interference was declared on June 14, 1934.

On the same date that appellant's said patent was issued, another patent, No. 1,952,230, was issued to him upon an application filed August 1, 1927. Both of said patents relate to the same general subject matter.

The invention involved relates to a machine that will cut irregular shapes in metal, in accurate correspondence with a master or pattern of the desired contour which is to be duplicated. The details of the machine involved in this interference are sufficiently described in the counts.

On May 12, 1932, an interference (No. 63,869) was declared between appellant's first application and appellee's application and certain other applications, which interference terminated on January 31, 1933 by an award of priority to appellant herein. In the decision of the Examiner of Interferences in said interference we find the following: "In view of the judgment which will be hereinafter rendered adverse to all junior parties the party Anderson will be entitled to claim all patentable subject matter common to the applications here involved."

The interference declared on May 12, 1932, will be hereinafter referred to as the "first interference," and the interference directly involved in this appeal will be referred to as the "instant interference."

At the time the first interference was declared involving appellant's application upon which his patent No. 1,952,230 was issued, appellant's second application, upon which his patent No. 1,952,231 was issued, was pending, and it contained a claim corresponding to count 1 of the instant interference, but that application was not involved in the first interference.

Of the counts here in issue, but one element in each count is here involved. In count 1 this element is described as "means for effecting relative movements of said supports *towards and away from each other.*" (Italics ours.) In count 2

this element is described as "a hydraulic motor for effecting a movement of one of said pairs in a direction *toward or away from the other pair.*" (Italics ours.)

After the instant interference was declared, and after the preliminary statements of the parties were opened, appellee moved for judgment of priority of invention in his favor upon the ground that appellant was estopped to claim priority of invention by reason of his failure to bring forth his second application during the prosecution of the first interference and request a two-party interference with appellee upon claims corresponding to the counts here involved.

Appellant also moved for judgment in his favor on the ground of res adjudicata growing out of appellee's failure to make claims in the first interference corresponding to the counts here involved.

The Examiner of Interferences denied appellant's motion for judgment and granted the motion of appellee upon the ground of estoppel set up by him as hereinbefore stated. Upon appeal, the Board of Appeals affirmed the decision of said Examiner, and from the decision of the Board appellant took this appeal.

The principal contention of appellant here is that the Board erred in not holding that appellee was estopped from claiming priority of invention, for the reason that the question herein involved could have been decided in the first interference, and, appellant having been the successful party in that interference, the judgment rendered therein was determinative of every claim which was or could have been included in the issue, based upon the applications in that interference. Therefore, appellant contends, the rule of res adjudicata applies, and appellee is estopped from claiming priority of invention in the instant interference.

We will first examine this contention of appellant, for it is conceded that, if it is well taken, the decision of the Board must be reversed, and it will not be necessary in that event to consider other questions raised in this appeal.

The question first to be considered is whether the counts here involved read upon appellant's first application involved in the first interference. If they do, appellant's claim of estoppel under the rule of res adjudicata is well taken.

Upon this question the Board of Appeals in its decision stated:

"In the Anderson patent No. 1,952,230, granted on the earlier Anderson application the work support is mounted for straight-line movement in a horizontal plane and the tool support is mounted for horizontal movement in a direction at right angles to the movement of the work support, but in a horizontal plane located above the plane of the work support. The work support carries a template and the tool support carries a tracer which engages the template and controls hydraulic mechanism for moving the work support and the tool support in such manner that the tool follows a path on the work similar in shape to the outline of the template.

"In the Anderson patent No. 1,952,231, involved herein, a tool has been provided which not only has cutting portions on its sides, as in the other Anderson patent, but also on its end. The hydraulic means for moving the work support during the transverse movement of the cutter causes the work to move toward and from the tool to vary the depth of the cut.

"Count 1 recites hydraulic means for relatively moving the supports transversely of each other and also requires other means, hydraulically controlled, for effecting relative movements of said supports toward and away from each other. It was the examiner's position that this count is not fairly readably on the Anderson patent No. 1,952,230, in which the two movements are confined to parallel horizontal planes. Anderson contends, however, that there is nothing in the count differentiating from said Anderson patent in which one movement may be properly designated as a transverse movement and the other as a 'towards and away from' movement. The expression, 'towards and away from,' in our opinion, was intended in the second Anderson application to distinguish from the earlier Anderson application disclosure and to define that movement by reason of which the depth of cut is varied during the transverse movement. Giving the claim of the count the meaning it has in the case in which it originated, it is not supported by the disclosure in the earlier Anderson application."

We are unable to agree with the conclusion of the Board upon this question.

The rule is so well established that it needs no citation of authorities, that in interference proceedings the counts will be interpreted as broadly as the language will reasonably permit. We do not regard as ambiguous the phrase "means for effecting relative movements of said supports towards and away from each other," as found in count 1, or the phrase "a hydraulic motor for effecting a movement of one of said pairs in a direction toward or away from the other pair," as found in count 2.

In appellant's earlier application the support carrying the master and work piece clearly moves "toward and away from" the tracer mechanism and cutter, although not in the same horizontal plane. The Patent Office tribunals apparently held that, for the counts to read upon appellant's first application, the supports must move toward or from each other upon the same horizontal plane. We think this is too narrow a construction of the phrase. We think that railroad trains may be said to move toward or away from each other although upon different levels. One may move toward or from a picture hanging upon a wall, although the picture may hang on a plane higher than one's head. Appellant uses the illustration of a boat upon a river moving from or toward a bridge, although the boat will pass under it. The Examiner seemed to be of opinion that the movement must be such, under the counts, as to bring the master and work into contact with the tracer and cutter upon the same horizontal plane. We find nothing in the count warranting this construction. Two automobiles passing along a street upon opposite sides thereof will move toward and away from each other without coming into collision. As a matter of fact, the support carrying the master and work disclosed in appellant's earlier application must move toward and from the tracer and cutter to perform the operation, although such movement is not in the same horizontal plane as the support of the tracer and cutter.

Moreover, even if the phrases under discussion be regarded as ambiguous, we are not in agreement with the view of the Board that the expression "towards and away from" in appellant's second application was intended by him to distinguish it from his earlier application. It

will be noted that both of appellant's patents were issued upon the same day. Prior to their issuance appellant transferred some of the claims in his second application to his first application. One claim so transferred and allowed reads:

"65. In a contouring machine, the combination of a tracer mechanism, a tool, a support on which said tracer mechanism and said tool are mounted, a master, a second support on which the master and the workpiece are mounted, means for effecting relative movements between the two supports both *towards and away from each other* and transversely of each other, means for controlling the first recited means operative by displacements of the tracer point through contactive engagement with the master, and means for maintaining the rate of feed of the milling tool substantially constant relative to the path across the face of the master traced by said point." (Italics ours.)

This claim, made and allowed in the first application, is persuasive, to some extent at least, that the phrase "towards and away from" used in appellant's second application was not intended to differentiate it from appellant's first application.

It was the opinion of the Examiner of Interferences that the allowance of said claim in appellant's earlier application was inadvertent, while the Board of Appeals held that the allowance of said claim could not affect the question here involved, inasmuch as the claim was transferred from the second application to the first long after the termination of the first interference.

■ We do not think that it may here be held that the allowance of claim 65 in appellant's first application was inadvertent. The claim was allowed by the Examiner presumably after a determination by him that the disclosure in appellant's first application supported the claim. This application has matured into a patent to appellant, which patent is prima facie valid. At any rate, we may not hold here that said claim 65 in that patent is invalid for lack of disclosure in the specification.

With regard to the Board's position that the allowance of claim 65 in the first application is immaterial to the question here involved, we would say that, of course, such allowance is not controlling of the question of disclosure here, but it is, in our opinion, some indication that, even if the phrase "towards and away from" be regarded as ambiguous, it was not intended to differentiate appellant's second application from his first application.

■ We think the rule of res adjudicata applies here, that each of the parties hereto could have made claims corresponding to the counts here involved in the first interference, and that appellee, having failed to make these claims in that interference, is now estopped from claiming priority of invention in the present interference. Under the well-established rule of res adjudicata, the judgment in the first interference determined every question which was or could have been included in the issue there made. Appellant having prevailed in the first interference, he was entitled, as held by the Examiner, to every claim readable on appellee's application and appellant's earlier application, and appellee is estopped from claiming priority of invention upon the counts here involved.

For the reasons stated herein, the decision of the Board of Appeals is reversed.

Reversed.